WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| M.B. a minor (by the mother, Deborah Beymer),<br><br>Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>Defendant. | No. CV-12-00188-TUC-BPV<br><br>**ORDER** |

Plaintiff's mother filed this action for review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73, having received the written consent of both parties.

**I. PROCEDURAL HISTORY**

Plaintiff's mother protectively filed an application for Supplemental Security Income ("SSI") on January 11, 2008, alleging an onset of disability beginning January 11, 2008 due to mental problems: learning difficulties; behavioral impairments; difficulty taking care of personal needs; and difficulty paying attention and sticking to a task. Transcript/Administrative Record ("Tr.") 106-12, 113, 117-128. The application was

denied initially and on reconsideration. Tr. 69-71, 72-74. A hearing before an Administrative Law Judge ("ALJ") was held on January 22, 2010. Tr. 57-68. The ALJ issued a decision on June 4, 2010, finding Plaintiff, 9 years old on the date of the ALJ's decision, had severe impairments of attention deficit hyperactivity disorder (ADHD; learning disorder; and explosive disorder, but was not disabled within the meaning of the Social Security Act. Tr. 18-38. This decision became the Commissioner's final decision when the Appeals Council denied review. Tr. 1-4.

Plaintiff's mother then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1) For reasons that follow, the Court reverses the decision of the Commissioner and remands for an immediate award of benefits.

## II.   STANDARD OF REVIEW

A person under the age of 18 will be considered disabled and eligible for Supplemental Security Income (SSI) if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner employs a three-step sequential process to evaluate SSI claims for minors. First, if the claimant is engaged in substantial gainful activity, he is not disabled. 20 C.F.R. § 416.924(b). Second, if the claimant does not have a medically determinable severe impairment(s), in that the impairment does not cause more than minimal functional limitations, he is not disabled. 20 C.F.R. § 426.924(c). Third, if the claimant's impairment does not meet, medically equal, or functionally equal an impairment in the

listings, he is not disabled. 20 C.F.R. § 924(d). There are six areas the Commissioner assesses for functional equivalence: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical wellbeing. 20 C.F.R. § 416.926a(b).

The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

**III.   DISCUSSION**

Plaintiff argues that the ALJ failed to give controlling weight to his treating

psychiatrist's opinion. In May, 2006, Plaintiff underwent a psychiatric intake evaluation with psychiatric nurse practitioner Karen Van Wie of Providence Service Corp., because of worsening temper tantrums and aggressive behavior towards others. Tr. 355. Ms. Van Wie assessed generalized anxiety disorder and post-traumatic stress disorder, as well as victim of neglect and rule out attention deficit hyperactivity disorder (ADHD). Ms. Van Wie assigned Plaintiff a GAF score of 45 to 50.[1] She prescribed medication and recommended an evaluation to rule out dyslexia, learning disorder, and color blindness. Tr. 359.

In November 2006, Plaintiff's care was transferred to treating psychiatrist Michael Mardis, M.D., at Providence, who conducted an initial exam of Plaintiff and diagnosed him with ADHD, Intermittent Explosive Disorder, and Anxiety Disorder, and considered a diagnosis of Pervasive Developmental Disorder Syndrome. Tr. 393. The administrative record contains medical records from Dr. Mardis dated from the initial evaluation through October 2009. Tr. 345-47, 361-64, 367-80, 383-86, 388-89, 391-95, 407-21, 423,

---

[1] GAF Scores range from 1-100. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, (4th ed.) (*DSM-IV*), at 32. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F .3d 1161, 1164 n. 2 (9th Cir. 1998). In arriving at a GAF Score, the clinician considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. *DSM-IV*, at 34. In children, a GAF, or Children's Global Assessment Scale score of 41-50 indicates:
> Moderate degree of interference in functioning in most social areas or severe impairment of functioning in one area, such as might result from, for example, suicidal preoccupations and ruminations, school refusal and other forms of anxiety, obsessive rituals, major conversion symptoms, frequent anxiety attacks, poor to inappropriate social skills, frequent episodes of aggressive or other antisocial behaviour with some preservation of meaningful social relationships.

454-59, 462, 482-84. During the course of treatment, Dr. Mardis prescribed numerous medications for Plaintiff's various symptoms, summarized in Dr. Mardis's psychiatric update containing a detailed medication report and description of each medication's efficacy, dated October 30, 2009.[2] Tr. 482. In October 2009, Dr. Mardis diagnosed Plaintiff with Asperger's disorder, ADHD not otherwise specified, mood disorder not otherwise specified, generalized anxiety disorder, and multiple learning disorders, and noted:

> [Plaintiff] has shown some improvement with his ADHD symptoms with medications, however he continues to have difficulties in that area. Some of the ADHD symptoms may actually be related to anxiety. The aggression has been a continual problem, and has shown some improvement with medications. Anxiety has not improved at all in the past few years. Even with the recent addition of an anti-anxiety agent. Social skills have shown some improvement with time, as he now has one good friend that he gets together with fairly often and expresses a desire to be with. He has not required any psychiatric hospitalizations or residential treatment placements.

Tr. 482, 484. Dr. Mardis completed a Childhood Disability Evaluation Form and opined that Plaintiff had marked limitations in acquiring and using information, with "some difficulties with learning disabilities – with reading and math, as well as writing"; marked limitations with attending and completing tasks, with "significant difficulties with sustaining his attention in tasks, and in focusing on relevant stimuli, leading to difficulties in school and poor follow through at home'" extreme limitations in interacting and relating with others, with "frequent episodes of aggression to family members,

---

[2] These medications included, in various dosages and combinations: Vyvanse; Dexedrine; Risperdal; BuSpar; Strattera; Metadate CD; Adderall; Prozac; Tenex; Abilify; and Lithium Carbonate. Tr. 483. At the time of the report, Plaintiff's medication regimen included Vyvanse, Dexedrine, Risperdal and BuSpar. Tr. 482.

- 5 -

leading to extreme disruption at home"; marked limitations in health and physical well-being, "due to aggressive incidents, anger, and significant anxiety over timing of events, contamination fears." Tr. 485-86.

The ALJ acknowledged Dr. Mardis as Plaintiff's treating psychiatrist but gave Dr. Mardis's opinion minimal weight, finding the opinion and evaluation over-restrictive based on Dr. Mardis's own treatment notes and other evidence of record. Tr. 26. The ALJ further discounted Dr. Mardis's opinion because of the possibility that Dr. Mardis submitted his opinion in an effort to assist Plaintiff because Dr. Mardis sympathized with the Plaintiff. Tr. 26. The ALJ gave great weight to the opinions of reviewing State Agency psychologist Jocelyn Fuller, Ph.D., and the other State Agency reviewing physicians who affirmed Dr. Fuller's assessment.[3] Tr. 26. Reviewing psychologist Dr. Fuller's opinion contradicted Dr. Mardis's opinion. Dr. Fuller found no limitation in health and physical well-being, and less than marked limitations in all other functional equivalence categories. Tr. 447-452. Plaintiff was examined by State Agency psychologist and speech pathologist Judith Kroese, Ph.D., who concluded that, with regard to intellectual functioning, "his overall score was within the Borderline range" and his "verbal intellectual functioning was within the Low Average range as well as his working memory." Tr. 436. Plaintiff's speed of processing and nonverbal intellectual functioning were also within the Borderline range. *Id*. His scores in the area of math

---

[3] Because the State Agency reviewing psychologist and physician who reviewed Dr. Fuller's assessment did not indicate what records they reviewed and failed to provide any explanation for the conclusions they reached, (Tr. 468-76) their assessments carry no additional weight and merit no further discussion in this order.

- 6 -

calculation and writing were significantly lower than would be expected for his overall level of intellectual functioning, and his behavior during the one-to-one evaluation was consistent with a diagnosis of ADHD. *Id*.

Where a treating doctor's ultimate conclusion is contradicted, as in this case by Dr. Fuller, it may be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record. *Carmickle v. Comm'r Soc.Sec. Admin.,* 533 F.3d 1155, 1164 (9th Cir. 2008)(citing *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir. 1983)); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (detailed, reasoned, and legitimate rationales required to reject treating doctor's ultimate conclusions). When rejecting the opinion of a treating physician, the ALJ can meet this "'burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The Social Security Administration has explained that an ALJ's finding that a treating source medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). Treating source medical opinions are still entitled to deference and, "[i]n many cases, will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Orn*, 495 F.3d at 632; *see also Murray,* 722 F.2d at 502 ("If the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate

reasons for doing so that are based on substantial evidence in the record.")

As a non-examining physician, Dr. Fuller's opinion, cannot, by itself "constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). Further, while it is not clear what medical evidence of record Dr. Fuller reviewed, Dr. Fuller's notes indicate that, if she in fact reviewed the entirety of the record, she ignored or failed to discuss in any detail treatment notes by Plaintiff's primary mental health provider Dr. Mardis. (*See* Tr. 449-50.)

The ALJ's finding that "Dr. Mardis's opinion and evaluation of the claimant's limitations in each domain is over-restrictive based on Dr. Mardis's own treatment notes and other evidence of record" (Tr. 26) does not set forth the specific detail necessary, nor does it achieve the level of specificity required to reject a treating physician's conclusion. *See Embrey*, 849 at 421-422 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required… .")  The ALJ states that, "**[a]s discussed more fully below**, Dr. Mardis reports on a number of occasions that the claimant's behavior at school has improved, and that the medication is helping the claimant's symptoms."  Tr. 26 (emphasis added). The ALJ, however, does not discuss Dr. Mardis's report more fully in the rest of the opinion, and, in fact, does not discuss Dr. Mardis's report, or Dr. Mardis's treatment notes consisting of nearly three years of treatment, in any more detail at all. *See* Tr. 26-34. While the Commissioner attempts to substantiate the ALJ's conclusion by referring to Dr. Mardis's

- 8 -

treatment notes, in opposition to Plaintiff's opening brief, (*see* Doc. 20, at 15-17), this Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. *Orn,* 495 F.3d 625 at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001)(the district court may not affirm the ALJ's decision "on a ground not invoked by the Commissioner in denying the benefits originally"); *Accord Varney v. Sec'y Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988) ("there may exist valid grounds on which to discredit a claimant's pain testimony.... But if grounds for such a finding exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision.") (internal quotes and citation omitted). For example, Dr. Mardis's opined that Plaintiff had marked limitations in health and physical well-being. Tr. 486. Examining consultative physician Dr. Kroese opined that Plaintiff's difficulties with attention, hyperactivity, and aggression had greatly interfered with his well-being. Tr. 438. Despite these two physician's opinions, the ALJ concluded, with no reference to the record at all, that Plaintiff had no limitations in health and physical well-being. Tr. 34. The ALJ's errs by rejecting both the treating and examining physicians' opinions without stating a reason, much less a specific and legitimate reason for doing so, based on substantial evidence in the record.

Finally, the ALJ errs by speculating, without introducing evidence of any actual improprieties, that Dr. Mardis fabricated his opinion in order to assist Plaintiff to collect disability benefits. *Lester,* 81 F.3d at 832.

**IV.   CONCLUSION**

The court has the discretion to make a determination to remand for further proceedings or to simply award benefits. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). At a minimum, the failure to make adequate findings necessitates a remand for a redetermination of fault. *Id*. "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." *Id*.

Plaintiff requests that the Court award benefits. Defendant requests that the Court deny relief or, if the Court concludes there was reversible error, remand for further proceedings. A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). "'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.' " *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)(citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)). Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id*. (citations omitted) Where the test is met, "we will not remand solely to allow the ALJ to make specific findings ... Rather we take the relevant testimony to be established as true and remand for an award of benefits." *Benecke*, 379 F.3d at 593 (citations omitted);

- 10 -

*see also Lester*, 81 F.3d at 834 (same).

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester,* 81 F.3d at 834 (quoting *Hammock,* 879 F.2d at 502); *Benecke,* 379 F.3d at 594 ("Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true."). The ALJ failed to provide legally sufficient reasons to reject Dr. Mardis's opinion. Dr. Mardis's opinion established marked limitations in three functional domains, and extreme limitations in one functional domain of the six areas the Commissioner assesses for functional equivalence. Adopting Dr. Mardis's opinion as true results in the conclusion that Plaintiff's impairment functionally equaled the listings. Under these circumstances, it is evident from the record that no outstanding issues must be resolved, and if Dr. Mardis's opinion is credited as true, the ALJ would be required to find the Plaintiff disabled. *See Benecke*, 379 F.3d at 593-595 (remanding for an award of benefits where no outstanding issues remain and ALJ would be required to find claimant disabled if evidence is credited); *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999)(where the court "conclude[s] that ... a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits."); *Lester*, 81 F.3d at 834 (remanding for payment of benefits because, after crediting doctor's opinion as true, inter alia, "the evidence ... demonstrates that ..." the plaintiff was disabled.);

**VI.    Conclusion**

IT IS THEREFORE ORDERED that the Commissioner's final decision in this matter is REVERSED.

IT IS FURTHER ORDERED that Plaintiff's claim for benefits is REMANDED to the Commissioner of Social Security Administration for an immediate payment of benefits.

The Clerk of Court is instructed to enter judgment accordingly and close this case.

Dated this 7th day of August, 2013.

_____
Bernardo P. Velasco
United States Magistrate Judge